UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA BATTAGLIA,

         Plaintiff,

   v.

ANDREW M. SAUL,[1] Commissioner of
 Social Security,

         Defendant.
_____

**DECISION
and
ORDER**

**18-CV-1199F**
(**consent**)

APPEARANCES:  LAW OFFICES OF KENNETH R. HILLER, PLLC
        Attorneys for Plaintiff
        KENNETH R. HILLER,
        TIMOTHY HILLER, and
        ANTHONY JOHN ROONEY, of Counsel
        6000 North Bailey Avenue
        Suite 1A
        Amherst, New York 14226

        JAMES P. KENNEDY, JR.
        UNITED STATES ATTORNEY
        Attorney for Defendant
        Federal Centre
        138 Delaware Avenue
        Buffalo, New York 14202
           and
        DAVID L. BROWN
        Special Assistant United States Attorney, of Counsel
        Social Security Administration
        Office of General Counsel
        26 Federal Plaza
        Room 3904
        New York, New York 10278

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On October 7, 2019, the parties to this action, in accordance with a Standing Order, consented pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned. (Dkt. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on July 1, 2019 (Dkt. 10), and by Defendant on August 5, 2019 (Dkt. 11).

**BACKGROUND**

Plaintiff Tina Battaglia ("Plaintiff" or "Battaglia")), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on July 6, 2012, for Social Security Supplemental Income ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff alleges she became disabled on August 1, 2010, based on lower back problems, herniated disk, depression/anxiety, difficulty walking, nerve damage, chemical dependency, and pregnancy. AR[2] at 131, 150, 154.

Plaintiff's application initially was denied on September 19, 2012, AR at 83, 86-93, and at Plaintiff's timely request, AR at 149-50, on October 16, 2013, a hearing was held in Buffalo, New York, before administrative law judge ("ALJ") Timothy Trost ("ALJ Trost") ("first administrative hearing"). AR at 55-82. Appearing and testifying at the first administrative hearing were Plaintiff, represented by her attorney, Kelly Laga, Esq. ("Laga"). On March 18, 2014, ALJ Trost issued a decision denying Plaintiff's claim, AR

---

[2] References to "AR" are to pages of the Administrative Record electronically filed by Defendant in 14 parts on March 28, 2019 (Dkts. 5 to 5-14).

at 29-46 ("first ALJ decision"), which Plaintiff timely appealed to the Appeals Council. AR at 15. On July 24, 2015, the Appeals Council issued a decision denying Plaintiff's request for review of the first ALJ decision. AR at 1-7. Plaintiff then commenced on September 15, 2015, a civil action in United States District Court for the Western District of New York, *Battaglia v. Colvin*, 15-CV-819G (W.D.N.Y.), seeking review of the first ALJ decision. On April 5, 2016, Chief District Judge Frank P. Geraci, Jr., approved the parties' Stipulation and Order for Remand, remanding the matter to the Commissioner for further proceedings. *Battaglia v. Colvin*, 15-CV-819G, Dkt. 10 (W.D.N.Y. Apr. 1, 2016).

Subsequent to the remand, on April 18, 2018, a second administrative hearing was held in Buffalo, New York, before ALJ Lynette Gohr ("the ALJ") ("second administrative hearing"). AR at 704-53. Appearing and testifying at the second administrative hearing were Plaintiff, again represented Laga, and vocational expert Eric D. Dennison ("V.E."). On June 27, 2018, the ALJ issued a decision denying Plaintiff's claim. AR at 664-93 ("second ALJ decision"). Plaintiff then commenced this action on October 30, 2018, seeking judicial review of the second ALJ's decision.

On July 1, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiffs' Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Administrative Record (Dkt. 10-1) ("Plaintiff's Memorandum"). On August 5, 2019, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief (Dkt. 11-1) ("Defendant's Memorandum"). Filed on August 26, 2019, was Plaintiff's Response to

the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13) ("Plaintiff's Reply").[3] Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[4]

Plaintiff Tina Battaglia ("Plaintiff" or "Battaglia"), born October 18, 1987, was 22 years old as of August 1, 2010, her alleged disability onset date ("DOD"), and 30 years old as of June 27, 2018, the date of the second ALJ decision. AR at 150, 195, 684, 711. Plaintiff attended school in regular classes, but dropped out during her freshman year of high school, and has not since received her graduate equivalency degree or any vocational training. AR at 155, 198, 711-12, 744. Plaintiff has previously worked for brief periods as an administrative assistant, cashier, cleaner, telemarketer, and waitress, AR at 162, but never earned enough to meet the statutory threshold to be considered substantial gainful activity ("SGA"). Plaintiff had a driver's license which was suspended because of non-payment of child support. AR at 714.

Plaintiff attributes her back impairment to injuries sustained in an automobile accident on November 26, 2007, following which her chiropractor, Julius Horvath, D.C. ("Dr. Horvath"), indicate Plaintiff was temporarily, totally incapacitated from February 4, 2008 to April 27, 2008, based on L5-S2 disc herniation, thoracic sprain/strain, and

---

[3] The court notes Plaintiff's Reply is incorrectly denominated as a motion on the docket.
[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

paraspinal muscle spasms. AR at 628-30. Plaintiff also has a long history of substance abuse, depression and anxiety.

At the second administrative hearing, Plaintiff testified her impairments that prevented her from working included anxiety, depression, and muscle spasms attributed to a herniated disc and L5-S1. AR at 713. Plaintiff lives alone in an apartment, AR at 714, tends to her personal grooming and care, prepares meals, does dishes and laundry, vacuums her apartment, and does not take public transportation but relies on her parents for rides to appointments and for grocery shopping. AR at 720-21. Plaintiff socializes with family, including her parents and younger brother. AR at 722-23. Plaintiff has three children ages 9, 5, and 2, but only sees the older two and only on an irregular basis. AR at 723-24. According to Plaintiff, she had joint custody of the oldest child but was unable to handle caring for the child, and her youngest two were taken away because of neglect. AR at 724-25. Plaintiff's daily activities included attending a methadone clinic, watching television and making telephone calls. AR at 728-29.

## DISCUSSION

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by

5

substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

6

the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation

marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 21, 2012, the date of Plaintiff's disability benefits application, AR at 670-71, and suffers from the severe impairments of disc herniation at L5-S1, obesity, asthma, posttraumatic stress disorder, and generalized anxiety disorder, *id.* at 671-72, but does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 672-74.  The ALJ further found that despite her impairments, Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),[6] except Plaintiff is further limited to standing or walking five hours, and sitting for three hours in an 8-hour workday, occasionally climbing ramps and stairs, never climbing ladders, ropers or scaffolds, occasionally stooping, kneeling, and crouching, never crawling, occasionally pushing and pulling with the bilateral upper extremities, needs to avoid concentrated exposure to extreme heat and cold, wetness, humidity, dust, odors, fumes, and pulmonary irritants, can occasionally operate a motor vehicle as part of job

---

[6] As defined under the relevant regulations,
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a) and (b).

duties, occasionally interact with supervisors, coworkers, and the public, and work in a low stress work environment defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, and no strict production quotas, minimal changes in work routine and processes. *Id.* at 674-83. The ALJ further found Plaintiff without any PRW such that the transferability of job skills is not an issue, *id.* at 683, but based on her age, which was defined as a younger individual, limited education, ability to communicate in English, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform including a garment sorter, a marker, and a folder. *Id.* at 683-84. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 684.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that at the fourth step, the ALJ erred by substituting her own lay opinion for the November 1, 2013, consultative opinion of orthopedic Hongbiao Liu, M.D. ("Dr. Liu"), Plaintiff's Memorandum at 19-24, and relying on stale medical opinion evidence and her own lay judgment in concluding that despite her mental impairment, Plaintiff could tolerate simple work with occasional contact with others, a determination Plaintiff maintains is not supported by substantial evidence in the record. *Id.* at 24-27. Defendant argues that despite rejecting Dr. Liu's opinion in part, the ALJ's RFC finding is supported by substantial evidence in the record, Defendant's Memorandum at 14-18, and the ALJ's assessment of Plaintiff's mental RFC also is supported by substantial evidence in the record including the November 1, 2013 consultative opinion of psychologist Gregory Fabiano, Ph.D. ("Dr. Fabiano"). *Id.* at 18-20. In reply, Plaintiff again argues the ALJ erred in assessing an RFC that is

9

unsupported by a medical opinion, Plaintiff's Reply at 1-3, and the ALJ arrived at the RFC determination by relying on stale medical evidence. *Id.* at 4-5. A fair reading of the record establishes the ALJ's assessment of Plaintiff's RFC, both physical and mental, is supported by substantial evidence in the record.

Specifically, Plaintiff objects to the ALJ's rejection of that portion of Dr. Liu's opinion that Plaintiff, in an 8-hour workday, can sit for one hour, stand for two hours, and walk for one hour, but would otherwise need to lie down. Plaintiff's Memorandum at 23-24. According to Plaintiff, the ALJ improperly rejected this opinion because Plaintiff did not adequately treat for any physical impairment that justified the opinion. *Id.* at 24. In opposition, Defendant argues that aside from not needing to present contradictory evidence because the Plaintiff has the burden of proving her RFC, the partial weight the ALJ gave the Dr. Liu's opinion is consistent with the record as a whole, including that Plaintiff received minimal treatment for her physical impairments, failed to follow up with recommended specialists, and had few adverse physical findings. Defendant's Memorandum at 15-18. Defendant's argument is correct.

In particular, although an MRI taken on February 28, 2008, in connection with Plaintiff's complaints of back pain following the November 26, 2007 automobile accident, shows straightening of lumbar lordosis probably due to muscle spasm, and noted at L5-S1 were central posterior annular tear with moderate associated posterior disc herniation indenting the ventral thecal sac, and trace bilateral facet joint effusions, AR at 624-25, with Dr. Liu finding reduced lumbar spine range of motion and positive straight leg raising test, AR at 575, the record is sparse as to further significant clinical findings regarding Plaintiff's back impairment. For example, despite opining that

Plaintiff was limited in a standard 8-hour workday to sitting for one hour, standing for two hours, and walking for one hour, but otherwise needed to lie down, AR at 578, and finding Plaintiff with reduced flexion, extension, and rotation of her thoracic and lumbar spine, and positive straight leg raising test, Dr. Liu found no spinal or paraspinal tenderness, no sacroiliac joint or sciatic notch tenderness, spasm, scoliosis, or kyphosis (abnormally excessive curvature of the spine in the thoracic and lumbar regions), Plaintiff had full strength and range of motion in her upper and lower extremities, no muscle atrophy, sensory abnormality, joint effusion, inflammation, or instability, with reflexes intact and equal. AR at 574-75. Dr. Liu further opined Plaintiff has a mild to moderate limitation to prolonged walking, bending, and kneeling, without mentioning any restriction to Plaintiff sitting or standing. AR at 575. Rather, such restrictions are found on a "check-box" form accompanying the Dr. Liu's consultative opinion. *See* AR at 577-82 (Medical Source Statement of Ability to Work-Related Activities (Physical), completed by Dr. Liu on November 1, 2013). Although Dr. Liu checked boxes indicating Plaintiff was limited to sitting for one hour, standing for two hours, and walking for one hour, AR at 578, Dr. Liu checked other boxes showing Plaintiff with the ability to occasionally lift and carry up to 50 lbs., consistent with medium work, continuously use her feet and hands for all activities except for pushing and pulling which was limited to occasionally, AR at 579, and had some postural limitations posed by limited motion in her lower back which rendered Plaintiff unable to heel-toe walk. AR at 580-81. Dr. Liu further opined Plaintiff was capable of all daily activities except for walking at a reasonable pace on uneven or rough surfaces, although Plaintiff walked without any assistive devices. AR at 582. Although the use of "check-box" forms has not been held

to be unreliable, *see Garcia Medina v. Commissioner of Social Security*, 2019 WL 1230081, at *3 (W.D.N.Y. Mar. 15, 2019) ("[t]here is no authority that a 'check the box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments"), where, as here, the findings on such check-box form are otherwise inconsistent with the findings of the physician who completed the form as well as other medical evidence in the record, the ALJ may disregard the form. *See Stottlar v. Colvin*, 2014 WL 3956628, at * 16 (N.D.N.Y. Aug. 13, 2014) (upholding ALJ's decision granting consultative physician's opinion little weight because it was based on the plaintiff's subjective complaints, inconsistent with the physician's largely benign findings upon examination as well as with other medical evidence in the record).

As relevant to the ALJ's assessment of Plaintiff's RFC in the instant case, the ALJ relied on other substantial evidence in the record including that six weeks after Dr. Liu rendered his consultative opinion accompanied by the check-box form, at a December 17, 2013 general physical examination, Vito Palumbo, D.O. ("Dr. Palumbo"), with Family Care Physician, P.C., reported Plaintiff walked with a normal gait and her musculoskeletal system was grossly intact. AR at 987-88. At a May 21, 2015 appointment at Wellness Medical Practice, Plaintiff complained of "flu/nausea," but denied any pain. AR at 1302-03. Upon examining Plaintiff's lumbosacral spine on January 16, 2017, Ellis Gomez, M.D. ("Dr. Gomez"), with Neighborhood Health Center where Plaintiff then received primary care, reported Plaintiff had normal posture and gait. AR at 1149-51. Significantly, Plaintiff points to no other evidence in the record supporting Dr. Liu's consultative opinion, particularly Dr. Liu's opinion regarding

Plaintiff's capacity for sustained walking as indicated on the check-box form, and, accordingly, the ALJ was permitted to discount such opinion.  *See Carney v. Astrue*, 380 Fed.Appx. 50, 52 (2d Cir. June 7, 2010) (holding an ALJ need not give controlling weight to a treating physician's disability opinion where other medical evidence in the record is "at odds" with such opinion).  Nor does the ALJ's failure to request the opinion of a medical source require remand "where, as here, the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity." *Tankisi v. Comm'r of Social Sec.,* 521 F. App'x 29, 34 (2d Cir.2013) (citing cases).  Accordingly, the ALJ did not improperly substitute his own lay opinion in assessing Plaintiff's RFC.

Nor did the ALJ err in relying on the consultative opinion of psychologist Dr. Fabiano.  In this regard, Plaintiff does not dispute that the ALJ's assessment of Plaintiff's mental RFC is supported by Dr. Fabiano's opinion, but maintains that because the opinion was rendered in 2013, approximately five years before the second ALJ decision, the opinion was stale and thus does not constitute substantial evidence supporting the ALJ's decision, Plaintiff's Memorandum at 25, and that the ALJ erred by discounting Dr. Fabiano's opinion without seeking another opinion.  Plaintiff's Reply at 4-5.  In opposition, Defendant argues that Plaintiff's insistence that Dr. Fabiano's opinion is stale and, thus, cannot be relied upon in assessing Plaintiff's mental RFC, is at odds with Plaintiff's reliance on Dr. Liu's opinion that was rendered at the same time.  Defendant's Memorandum at 17-18.  Defendant further maintains that even if Dr. Fabiano's opinion is considered stale, there was no other opinion to rely on in assessing Plaintiff's mental RFC because even following remand in April 2016, the Plaintiff failed

to appear at any of the multiple follow up consultative evaluations scheduled by the SSA, Defendant's Memorandum at 18-19, and nothing in the record indicates Plaintiff's mental impairment deteriorated after Dr. Fabiano's November 1, 2013, consultative examination such that the ALJ properly relied on it. *Id.* at 19. *See Navan v. Astrue*, 303 Fed.Appx. 18, 20 (2d Cir. 2008) (finding the ALJ appropriately relied on the near absence of any medical records during the relevant period in finding the plaintiff's "claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition.") (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)).

As relevant, upon examining Plaintiff on November 1, 2013, Dr. Fabiano reported Plaintiff had no psychiatric history until 2012 when she began monthly sessions with a psychiatrist for depressed mood and anxiety. AR at 568-69. Plaintiff also reported attending methadone maintenance since 2005 for heroin addiction, and attending meetings and weekly counseling at the Drug Abuse and Research Treatment ("DART") program. AR at 569. Dr. Fabiano found Plaintiff's demeanor and responsiveness to questions were uncooperative and irritable, manner of relating to others, social skills, and overall presentation were poor, and Plaintiff was somewhat irritable and combative in response to the examiner's questions. AR at 569. Plaintiff had fluent, clear speech, adequate expressive and receptive language skills, thought processes were coherent and goal directed without hallucinations, delusions or paranoia, affect was angry and irritable, sensorium was clear, oriented in all three spheres (person, place and time), with intact attention and concentration, average intellectual functioning, fair insight, and good judgment, but recent and remote memory skills were impaired likely the result of emotional stress and Plaintiff's irritability. AR at 570. Plaintiff, who was well-groomed,

14

reported she was able to tend to her personal needs, but received help from her father with cooking, cleaning, laundry, shopping, money management, and transportation. AR at 570-71. Dr. Fabiano opined Plaintiff did not appear limited in her ability to follow and understand simple directions and instructions, perform simple or complex tasks independently, maintain attention, concentration, and a regular schedule, learn new tasks, or make appropriate decisions, but was mildly limited in her ability to relate adequately with others, and appropriately deal with stress based on her psychiatric symptoms. AR at 571. Dr. Fabiano diagnosed depressive disorder not otherwise specified, anxiety disorder not otherwise specified, and opioid dependence in full remission, recommended Plaintiff continue with psychiatric and drug treatment including intense individual cognitive behavioral therapy, and Plaintiff's prognosis was fair provided Plaintiff continued to manage with sobriety and adhere to treatment regimes. AR at 571-72.

Although Dr. Fabiano's opinion was rendered on November 1, 2013, as noted, *supra*, it is no more stale than that of Dr. Liu, also dated November 1, 2013, rendering Plaintiff's protest based on staleness disingenuous. Further, as the ALJ found, AR at 681, Plaintiff often failed to comply with treatment and was often a "no-show" at counseling appointments, AR at 681 (citing, *inter alia*, AR 1656 (reporting Plaintiff was attending the Monsignor Carr Institute substance abuse treatment program but was discharged from the program on May 11, 2016, when it was noted contact with Plaintiff was lost after she last attended on February 22, 2016, before leaving the program against clinical advice)). The ALJ also considered evidence that several medical treatment sources questioned Plaintiff's compliance with her medical and substance

15

abuse treatment program, AR at 680, and that Plaintiff missed numerous appointments for further mental health consultative appointments, including on January 25, 2017 (AR at 908-13), February 22, 2017 (AR at 914-19), March 21, 2017 (AR at 920-31, 905-06), July 11, 2017 (AR at 937-48), and August 3, 2017 (AR at 949-50).  *See Turner v. Berryhill*, 2017 WL 4285902, at *3 (W.D.N.Y. Sept. 27, 2017) (ALJ properly considered the plaintiff's history of non-compliance with her prescribed treatment in denying benefits); *Nicholson v. Colvin*, 2015 WL 1643272, at *7 (N.D.N.Y. April 13, 2015) (ALJ properly considered the plaintiff's failure to comply with medical treatment as a factor weighing against her credibility).  When asked during the second administrative hearing, Plaintiff was unable to provide any explanation for missing treatment and appointments. AR at 715-19, 725-26.  Moreover, a plain reading of the second ALJ decision establishes the ALJ considered other, more recent evidence of Plaintiff's mental RFC that was consistent with Dr. Fabiano's opinion, including treatment progress notes from DART between January 1, 2017, and February 26, 2018, which indicated Plaintiff was compliance with her substance abuse treatment which was considered stable and was not then on any psychiatric medication.  AR at 681 (citing AR at 1321-1572). Accordingly, there is no merit to Plaintiff's argument that the ALJ erroneously relied on the stale opinion of Dr. Fabiano in assessing Plaintiff's mental RFC; rather, substantial evidence in the record, including the more recent mental health records from DART, which fail to show deterioration of Plaintiff's mental health after November 1, 2013.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED. The Clerk of Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: March 16th, 2020
             Buffalo, New York